[Opinion delivered March 17, 1886.]

---

## [No. 2064.]

### CYRILLA WILSON *v.* THE STATE.

THEFT — INTENT — CHARGE OF THE COURT — EVIDENCE. — To support a conviction for theft it must appear from the evidence that the intent to steal existed at the very time of the taking. If the fraudulent intent did not exist at the time of the taking, the subsequent appropriation of the property does not constitute theft. See the statement of the case for proof in a theft case which demanded of the trial court a pertinent and affirmative application of the rule, and note special instructions upon the question, the refusal of which is *held* to be error.

APPEAL from the Criminal District Court of Galveston. Tried below before the Hon. Gustave Cook.

The conviction in this case was for the theft of $41.50, the property of Robert P. Sherwood, in Galveston county, Texas, on the 7th day of October, 1885. A term of two years in the penitentiary was the punishment assessed against the appellant.

Robert P. Sherwood testified, for the State, that on the 7th day of October, 1885, he changed his pants in the dining-room of his residence in Galveston, Texas. When he went to make the change he took his pocket-book from his pocket and placed it on the sideboard which stood in the room, and did not, so far as he could recollect, put the book back into his pocket. Witness very shortly missed his pocket-book, and, failing to find it after much search, he reported the loss to the police. The pocket-book contained one twenty and two ten-dollar bills, and one dollar and one fifty-cent piece in silver, of the currency of the United States. The defendant, at the time of the loss of the pocket-book and money, was a servant in the employ of the witness's family. She did not have the consent of the witness to take either the pocket-book or the money. The pocket-book, containing a few dollars in money, was given back to the witness, some time after its loss, by Officer Lorden, of the Galveston city police force.

On cross-examination, the defense proposed to ask the witness what kind of a servant the defendant was while in his employ. The trial court sustained the State's objection to the question, and the defense excepted.

Laura Garner was the next witness for the State. She testified that, in October, 1885, she heard the defendant and Rose Martin talking together about money which the defendant said that she found on the floor in the dining-room of the house of the prosecuting witness Sherwood. She heard the defendant say that she had given Rose Martin $25 of the money for safe keeping. She said also that she had given $10 of the money to Dolly Williams, Mr. Sherwood's cook, as "hush money." She said, when she placed the $25 in Rose Martin's hands for safe keeping, that she was afraid to keep the money about her. Defendant bought clothes with the money she kept.

Cross-examined, the witness testified that she knew the defendant well as Cyrilla Wilson. She saw the defendant give Rose Martin $25, and heard her tell Rose to keep the money for her, as she was afraid to keep it about her at Mr. Sherwood's. Defendant, Rose and witness were then standing together at Mr. Marx's back gate, about a block distant from Sherwood's place. After the defendant left Rose said to witness: "I am going down and whip Jennie Hatchett now; I have got the money to pay the fine for doing it." The witness saw a large number of bundles of goods going to defendant at Mr. Sherwood's house, and remarked to the girls present: "Just look at the things Cyrilla is getting." Some one of the girls remarked: "Cyrilla has plenty of money." After the defendant had spent and given the money away, some one told her that she had better take Mr. Sherwood's money back to him, or she would have trouble.

Officer Lorden was the next witness for the State. He testified that Mr. Sherwood applied to him to investigate the theft of his pocket-book and money. Witness thereupon arrested the defendant and informed her that she need say nothing about the charge against her, and that, if she did, it would be used in evidence against her. She at first denied all knowledge of the pocket-book and money, but subsequently said that she found the property on the floor of the dining-room of Robert P. Sherwood's house. She said that she first gave $25 of the money to Rose Martin, and then spent the money in the purchase of goods, a bill of which she gave the witness, and which he still has. She then told witness that she gave $10 to Mr. Sherwood's cook, and that she hid the pocket-book with

some money in it over a window in a room at Sherwood's house. Witness found the pocket-book, containing about $5, which he turned over to Mr. Sherwood.    The State closed.

Jennie Hatchett was the first witness for the defense.   She testified that she was present at the conversation between the defendant and Rose Martin at Marx's gate, testified to by Laura Garner. Laura Garner was not present at that conversation.   No one but witness, defendant and Rose Martin were present.   What defendant said about the money, she said to the witness and to no one else. She told the witness that she had given Rose $25, but she said nothing whatever to Rose about keeping the money for her because she was afraid to keep it about Sherwood's house.   At that time Laura Garner was in the kitchen, too far off to hear a word that passed between the witness, defendant and Rose Martin.   The money had all been spent when advice to defendant that the money was Sherwood's, and had better be returned, began to be given. Defendant gave Dolly Williams $10, $25 to Rose Martin, and spent the balance on herself.   Her friends got the larger part of the money.

Jennie Turner testified, for the defense, that the defendant was a good girl.   Her mother died when defendant was about four years old, and then witness's mother took her and raised her.   She is now about sixteen years old, and for the first time in her life stands accused of theft.   She is simple-minded and destitute of training. She has been constantly at work since she left the charge of the witness's mother, about nine months before the trial.

The special charges refused, and referred to in the head-notes, read as follows:

"Defendant asks the court to give the following special charge to the jury:  'Gentlemen: — If you believe from the testimony that, at the time of the finding by defendant of the pocket-book containing the money described in the indictment, she had no intention to appropriate the same to her own use, but, on the contrary, intended to restore it to the owner when found, but that afterwards she disposed of it to her own use, either before or even after she knew who the owner was, there was no theft, and you must acquit defendant.

"'2. If you believe from the testimony that the defendant found the property alleged, and that said property was actually lost, or was reasonably supposed by defendant to have been lost, and that she appropriated it with intent to take entire dominion over the property, really believing *then* that the owner could not be found,

and that she afterwards disposed of the property to her own use, either before or even after she knew who the owner was, it is not theft, because the taking, though not exactly innocent, is not punishable, and you will acquit defendant.'"

The action of the trial court, refusing the requested instructions above set out, was excepted to, and constitutes the basis of the opinion of this court reversing the judgment of conviction.

*W. L. Wilson*, for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

WILLSON, JUDGE. The material inquiry in this case, presented by the evidence, was the *intent* of the defendant at the *very time* of *taking* the pocket-book and money. Was her intent at that time *fraudulent?* If not, she is not guilty of theft, although she afterwards appropriated the property to her own use. (*Reed* v. *The State*, 8 Texas Ct. App., 40; *Warren* v. *The State*, 17 Texas Ct. App., 207.) Whilst the charge of the court submitted this issue to the jury in a general way, it did not apply the law applicable to the facts clearly, pointedly and affirmatively, so that the jury could easily and unmistakably comprehend the nice distinction which the law makes as to the *time* of the *fraudulent intent*.

To supply this defect in the charge the defendant, by counsel, requested two special instructions which clearly and pertinently presented the law applicable to the evidence. These special instructions were refused, and this action of the court is presented by bill of exception. It was error to refuse to give the special instructions, and for this error the judgment will be reversed and the cause remanded for a new trial.

*Reversed and remanded.*